UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>) Case No. 22-cr-10290-WGY<br>JASON DUHAIME, )<br>)<br>Defendant. )<br>) | |

## SENTENCING MEMORANDUM

Jason Duhaime was convicted after jury trial in June 2024 of providing false information relating to an explosive device and making false statements to federal investigators. The offenses took place in September 2022. At that time, Mr. Duhaime had no prior criminal history. He was a longtime employee of Northeastern University with a secure position as a manager of the university's Immersive Medial Lab.

Today, Mr. Duhaime is a convicted felon and, in many respects, a ruined man. His employment at Northeastern University was terminated after the incident. His life savings were depleted through the hiring of predecessor counsel. The notoriety of his case made it difficult for him to find employment and took a toll on his mental health; it also estranged him from family members and friends. Although Mr. Duhaime was eventually able to find work through a temporary agency at a factory in New Hampshire, as well as a retail position at Market Basket, these jobs are a far cry from the professional position he held at Northeastern.

Over the past six months, Mr. Duhaime has also suffered a precipitous decline in his physical health. In July, he was hospitalized for approximately one month after developing a spinal abscess. He underwent a major surgical procedure in August and spent time thereafter in a rehabilitation facilitation receiving extensive physical therapy. Unfortunately, this did not resolve the issue. Mr. Duhaime was re-hospitalized in November and underwent another

regimen of physical therapy at a rehabilitation facility in December. Although he has now been discharged, he is essentially an invalid. Mr. Duhaime can barely walk and has chronic pain. He sleeps in a Lazy Boy chair because he is unable to get out of bed without assistance. His medical providers are uncertain whether the spinal infection is fully resolved and whether further surgery will be necessary.

In light of his physical condition and impairments, as well as the fact the crimes represent a notable aberration in a lifetime of law-abiding behavior, the defense submits that a sentence of incarceration would be unduly punitive and unnecessary. Instead, the sentencing factors enumerated at 18 U.S.C. 3553(a) support a sentence of time served—reflecting that he was held in custody for one week at the time of his arrest—to be followed by two years of supervised release, with home detention imposed for the first year of supervision. He further requests that the Court decline to impose a fine, as he lacks the ability to pay.

## Duhaime's Background and Medical Conditions

Mr. Duhaime's background is well summarized in the presentence report. He was raised in New Hampshire and endured a traumatic childhood. His father was an alcoholic who was abusive to Mr. Duhaime, his mother, and his siblings. This led to his mother leaving his father when Mr. Duhaime was approximately 12 years old. Thereafter, the family (minus the father) spent time in a shelter together and struggled financially. Mr. Duhaime received some special education services while attending public school in the Manchester area, but was able to graduate high school and went on to study computer science at Keene State University. This led to a career in the information technology field, first at the Boston Medical Center and later at Northeastern University, where he was employed for approximately 8 years. He is divorced, although he maintains a good relationship his ex-wife. At the time of his arrest, he was in a

committed relationship with a woman residing in Texas but that relationship ended due to his arrest in this case.

Of particular relevance to current proceedings, Mr. Duhaime is in poor and precarious health.[1] Mr. Duhaime has a history of back troubles and has had two prior back surgeries, one in 2011 and another in 2017. On July 24, 2024, Mr. Duhaime was admitted to the Elliott Hospital after experiencing an onset of back pain so severe that he was unable to get out of bed. Doctors found a lumbar abscess—a spinal infection—and he underwent surgery on August 8th. Following the surgery, he was admitted to Northeast Rehab where he received physical therapy to assist with his mobility and tasks of daily living. He remained at the rehabilitation facility through the end of August.

Upon being discharged from the rehabilitation facility, Mr. Duhaime returned home and attempted to resume his life. He struggled. He could not walk without the aid of a cane, could not use stairs safely, and received antibiotics intravenously. Despite participating in ongoing physical therapy, he saw little improvement in his strength, mobility and pain levels. On November 13, 2024, he was readmitted to the hospital. He remained there until November 23rd when he was placed at Encompass, another rehabilitation facility. He underwent another round of physical therapy at Encompass and was discharged on December 7th.

---

[1] Medical records documenting Mr. Duhaime's medical condition will be submitted separately under seal.



*December 3, 2024 Photo of Mr. Duhaime at Encompass Rehabilitation.*

Since his return home on December 7th, Mr. Duhaime has been unable to work.  He is largely disabled, lacking in strength and mobility.

Mr. Duhaime is working closely with an infectious disease specialist and a spinal specialist.  A spinal fusion surgery with a titanium implant is a possibility, but the possibility also exists that the spinal infection may not be fully resolved.  Following an appointment earlier this week, his spinal specialist, Dr. Alexander Gamble, wrote that there does not appear to be a "clear answer whether his bacterial infection has been cured or not."  He has recommended that Mr. Duhaime discontinue the antibiotics he has been for the past 6 months, as they could be "suppressing a smoldering infection."  He further recommends that Mr. Duhaime be observed closely for at least 3 months with repeated imaging (MRIs) of his back, as there is a danger that the infection could "roar back to life" following the cessation of antibiotics.

Sentencing Guidelines

The court must "begin sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007).  Mr. Duhaime objects to the obstruction of justice adjustment under USSG §3C1.1.  The reports finds that §3C1.1 applies

because Mr. Duhaime "has continuously told investigators that the statements he made about the Pelican case, the marks on his arms, and the threatening note were true and accurate."

The statements cited above are the basis for Counts 2 & 3 of the indictment. As such, they are part and parcel of the offenses of conviction. Mr. Duhaime maintains that §3C1.1 does not apply where the obstructive conduct is a "constituent part" of the offense. *United States v. Clark*, 316 F.3d 210, 211 (3d Cir. 2003); see also *United States v. Handy*, 764 Fed.Appx. 184 (3d Cir. 2019). As the 8th Circuit put it, "Section 3C1.1 does not apply to conduct that is part of the crime itself." *United States v. Lloyd*, 947 F.2d 339 (8th Cir. 1991).

The government directs the Court's attention to several out-of-circuit cases rejecting the argument that a §3C1.1 enhancement constitutes "double counting" where the obstructive offense (here, the making of false statement) is swallowed under the grouping rules. *See Govt. Sentencing Memo* at 4. These cases are inapposite. In *United States v. Yielding*, the Defendant was convicted both of violating the Medicare anti-kickback statue as well as falsifying a document in connection with a government investigation. 657 F.3d 688 (8th Cir. 20011). In *United States v. Fiore*, the Defendant was convicted of securities fraud and perjury related to testimony given by the Defendant in a related civil investigation. 381 F.3d 89 (2d Cir. 2004). In *United States v. Maggi*, the Defendant was convicted of being involved in a conspiracy to launder money as well as several counts of obstruction for various activities she undertook to assist in hiding various assets belonging to her boyfriend, a drug kingpin who had been assessed a $60 million judgment in a special verdict. 44 F.3d 478 (7th Cir. 1995). None of these cases speaks to the facts of this case, where the basis for the §3C1.1 enhancement consists of the Defendant merely repeating the same false statements for which he was convicted in Count 1.

5

Absent the enhancement for obstruction of justice, the total offense level is 14. Because Mr. Duhaime has zero criminal history points and falls in Criminal History Category I, the corresponding guidelines sentencing range (GSR) is 15-21 months imprisonment.

<u>Argument</u>

Regardless of the manner in which the Court resolves the guidelines dispute above, the Defendant contends that sufficient grounds exists for the Court to impose a non-incarcerative sentence, either as downward departure pursuant to §5H1.4 or as a variance. Mr. Duhaime is in a greatly diminished physical condition and in chronic pain. He cannot walk without the aid of a cane. He cannot navigate stairs safely. He cannot roll out of bed and has difficulty completing tasks of daily living.

What's more, he is also at a precarious stage of his treatment. His doctors have a concern that the bacterial infection in his spine may not be resolved, having been suppressed by his antibiotic regiment over the past six months. They have recommended discontinuing antibiotics to determine whether that is the case, but doing so will require vigilant monitoring and imaging over coming weeks and months. While there is surely no good time for one to be imprisoned, the timing here could hardly be worse. Under 18 U.S.C. § 3553(a)(2)(D), in fashioning a sentence, the Court must consider the need for the sentence imposed to provide the Defendant with needed medical care in the most effective manner. The defense suggests that this factor carries special force in this case, given Mr. Duhaime's present medical condition.

The other sentencing factors do not compel a different result. Mr. Duhaime is a first-time offender and represents no threat to public safety. The Court must fashion a sentence that adequately punishes the defendant and promotes respect for the law. Here, the time-served sentence proposed reflects the fact that Mr. Duhaime spent one week in jail following his arrest and substitutes a period of home detention for imprisonment to account for Mr. Duhaime's ailing

6

health.  In so doing, Mr. Duhaime's recommendation mirrors the government's but for the substitution of home detention for imprisonment.

In the end, the question before the Court is this: what sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing?  Is imposing a prison sentence necessary to reflect the seriousness of the offense and to ensure just punishment?  The Jason Duhaime that appears before the Court for sentencing is a broken man, both in body and in spirit.  Now a convicted felon, this case has resulted in not only the loss of a good job, but a career.  It has depleted his life savings.  Family members and friends have cut ties with him.  And it has all unfolded under the glare of intense public scrutiny.  The consequences to Mr. Duhaime for his conduct in this case have been profound and life-altering indeed.  With these considerations in mind, the defense respectfully submits that interests of punishment, respect for the law, and general deterrence are satisfied and that the proposed sentence appropriately balances the various sentencing factors.

Objection to Proposed Special Condition of Supervision #7

The presentence report contains a proposed special condition of supervision (#7) permitting the search of Mr. Duhaime's "person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office."  Mr. Duhaime objects to this proposed condition.  Special conditions of supervised release must be both "reasonably related to …the nature and circumstances of the offense and the history and characteristics of the defendant."  USSG § 5D1.3(b).  Moreover, special conditions must "cause no greater deprivation of liberty than is reasonably necessary to achieve the goals [of supervised release.]"  *Id.*  Mr. Duhaime contends that the proposed conditions neither reasonably relate to the circumstances of his offense, nor is

reasonably necessary to achieve the goals of supervised release. In particular, he notes that he has been under pretrial supervision for over two years to date without issue.

Respectfully submitted,

*/s/ Scott Lauer*
Scott Lauer
B.B.O.# 667807
Assistant Federal Public Defender
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061
scott_lauer@fd.org

CERTIFICATE OF SERVICE

I, Scott Lauer, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"). Attachments to the motion will be submitted to the Court under seal, as they contain personally identifiable information (PII) and sensitive medical information concerning the Defendant. Courtesy copies of all documents have also been emailed to U.S. Probation Officer Carolyn Patten.

Date: January 10, 2025                                             */s/ Scott Lauer*
                                                                   Scott Lauer